Opinion of the court delivered by
Judge Whyte.
The important facts of this case are these:—The plaintiff in error, Baxter, held a note for money, within the jurisdiction of a justice of the peace; he delivered this note to the defendant, Marsh, a constable, to collect; Marsh collected the money due on the note, but failed to pay over the money to Baxter; Baxter gave Marsh, the constable, a legal notice, that he would move the county court &c. fora judgment against him and his securities; but a notice of the motion for judgment was not given to Burton and Lashlee, the securities. Defence was set up by the securities, that they were not liable to judgment for want of legal notice. This defence was sustained by the county court, who rendered judgment against the constable Marsh, but refused to render judgment against the securities, overruling the motion as to them. Baxter took an appeal to the circuit court. The circuit court affirmed the judgment of the county court rendering the like judgment; from which judgment of the circuit court, Baxter, the plaintiff' in error, took his appeal in error, to this court.
The error assigned is, that the circuit court gave judgment in favor of the defendants, Burton and Lashlee,; whereas judgment ought by law, to have been rendered against them. Two points are urged as opposing the plaintiff’s right to the having a judgment against the security: 1st that it is contrary to the principles of the common law to render judgment against any man without giving him an opportunity of defending himself; and that this opportunity is alone substantially afforded by actual notice. 2dly. That the acts of Assembly respecting the'liabilities of constables, and the remedies against them, extend not to the case of their securities without actual notice.
*461 It is true, the common law permits a judgment to be rendered against no one, without giving him an opportunity of defending himself, and shewing cause, if any he hath, why the judgment asked for ought not to be ed: for this purpose it requires the party defendant to he before the court, either actually or potentially, in person, or by his bail, or by his property, and in some particular cases, by a warning, or notice.
The power of a statute, however, transcends that of the common law, and wherein the legislature has expressed its will by that mode, it supercedes, to that extent, the rule of the common law. Our acts of Assembly, or statutes, have in many instances interfered with the rule of common law, dispensing with notice, and especially in giving remedies against constables, and other officers on their liabilities founded on official delinquency. These statutable invasions upon the common law have received the sanction of the courts of this State, by solemn decision, and the genera] practice thereupon is not now to be shaken: See Cook’s Rep. 466.
The second point made in the. defence will next be examined, whether these statutable interferences comprehend the case now presented to this court, upon the record, and authorize a judgment against the securities of the constable.
The counsel for the plaintiff in error, to support his case, cited and relied upon the acts of Assembly of 1803, ch. 18, sec. 1, 2,4, and 1801, ch. 7, sec. 5. This court is of opinion, that the act of 1803, ch. 18, does not embrace the present case against a constable, for money collected by him on a note within the jurisdiction of a justice of the peace. The first three sections of the chapter having reference to the conduct of sherifls and other officers acting under executions issuing from the clerk of a county court, or other superior court; and the 4th section is appropriated alone to the subject matter of county money, in the hands of the sheriff, or other officer who is a collector thereof, and the county trustee, the person to whom it is to be paid; it applies not to the case of *462 money due,, and payable to a private individual. The act, however, is so far analogous,to the present case, as to exhibit instances of remedy given against sheriffs &c. without notice, in other cases, but not in the present case.
The acts of Assembly embracing the present case, are the acts of 1817, ch. 54, sec. 2; 1801, ch. 7, sec. 5, and 1815, ch. 40. The first mentioned act is in these words, “that when any sheriff, coroner or constable who is entrusted with the collection of debts, under the jurisdiction of a justice of the peace, whether due by bond, bill or otherwise, shall receive such money, whether before the service of any warrant or after; or before the rendition of any judgment therefor, or after such judgment, such sheriff, coroner, constable and their securities, shall be liable to a judgment, by motion, for such monies, in as complete and ample a manner, as if the same had been collected by execution.” What is that manner? the second of the above mentioned acts, to wit, 1801, ch. 7, sec. 5, describes it. It is this, “to order execution against the delinquent officer and his securities, for the debt and costs complained of.” I shall cite this act verbatim, that it may appear whether the plaintiff in error is entitled to this remedy under it. The act says, “in case any constable or other legal officer fail, or refuse to render the moneys on executions put into his hands within thirty days after the expiration of the stay, or twenty days, if no stay is granted, unless by his return it shall appear no property can be found to satisfy the debt and costs; it shall and may be lawful for the person aggrieved in the premises, or his attorney, to move for judgment against the officer herein offending and his securities, at the next county court wherein the delinquency happens, and it shall be the duty of said court, if on investigation it shall appear to the court, the constable or other legal officer so offending is guilty of neglect in rendering the moneys as aforesaid, for the debt and cost complained of.”
This act prescribes these terms, forming a case, upon-which it makes it the duty of the court to order out execution against the delinquent officer and his securities *463 for the debt and costs complained of. The first term failure, or refusal to render the moneys on executions put into his hands, within thirty days after expiration of the stay; if no stay, within twenty days unless it appears by his return there is no property. The second term is, to move for judgment at the next county court, wherein the delinquency happens. The third term is, the appearing to the court on investigation, that the officer is guilty of neglect in rendering the moneys as aforesaid.
These three terms, composing the case in this act of 1801, ch. 7, sec. 5, or their equivalents, exist in the case on the record before the court; corresponding to the first term in the act is, its equivalent in the record under the act of 1817, ch. 4, sec. 2, of a constable defendant. Marsh, entrusted with the collection of a debt under the jurisdiction of a justice of the peace, due by bill, and the money received by him; corresponding to the third term in the act, is matter of the same import in the record, which says, that on investigation the court finds, that the constable Marsh hath failed to pay over the said sum of $33 58 when demanded.
As to the second term in the act, the making the motion for judgment at the next term of the county court, wherein the delinquency happens. The record shews that the motion lor judgment was made at the county court, wherein the delinquency happened; but is silent, as to its being at the next court afterwards, or not. This defect, if it be one, is cured by the notice to Marsh, the constable, according to the case of Singleton vs. Bell, Cook’s Rep. 268, a case under this same act of 1801, ch. 7, sec. 5, the court says, “could we have discovered that Singleton had notice of the motion, and contested it, we would not reverse, although the record is silent on the question, whether the motion was made at the next court, because we should notin that case think it material.” See the case supra. Why would not the court have rendered the judgment for its not appearing that the motion was made at the next court, if they could have discovered from the record, that Singleton the constable had notice! *464 f°r reason, that if he had had notice, he might have defended himself, if he had any defence to make; and this act not requiring any notice to be given to him, it is to pe taken strictly, the more especially as from the presumption of law, every man being acquainted with or having a knowledge of the law, he would attend at the next court after his delinquency, expecting the motion for judgment then to be made against him, pursuant to the statute, hut if not then made, he might consider it waived, if not altogether, at least for a time. Being thus thrown off his guard, it would be unjust to charge him unsuspecting, without notice. It is further to be remarked, that the words, “and contested it” in the above report, are superfluous, and must be an error in the reporter, the opinion of the court being so far mistaken by him; for if notice were necessary, and it is actually served on the constable, it is quite immaterial whether ho contests the motion for judgment or not, or whether he appears or not, the consequences being the same; because the court can proceed to judgment as well in the one case as in the other. The law goes even farther. A justice of the peace may convict an offender in his absence, upon his default to appear, after being duly summoned: Queen vs. Simpson, 10 Mod. 379. While remarking on this act of 1801, ch. 7, sec. 5, it is to be noticed, that the very point in this present case, to wit, whether notice to the securities is necessary or not, has come before this court and received a solemn decision, that notice is not necessary, in the case of Williams vs. Harvy, at Nashville in the year 1813, where it is stated by the court that, “in previous decisions the point seems to be settled, that a notice is not requisite.” This is to be understood when the motion for judgment is made at the next court after the existence of the delinquency.
The last act of Assembly cited above, as bearing on this case, is 1815, ch. 40, which gives 12¿ per cent, on the sum detained. Judgment will accordingly be so rendered against these securities, Burton and Lashlee, on the sum of $33 58, — being the sum detained.
*465 Both the judgments of the county court and circuit court are erroneous — in each a joint judgment ought to have been rendered against the principal, Marsh, and the securities, Burton and Lashlee. The suit was joint against all, and so ought to have been rendered the judgment.
Both judgments therefore must be reversed, and this court, proceeding to render such judgment as the circuit court ought to have rendered, reverses the judgment of the circuit court and county court, and directs judgment to be rendered vs. Marsh, the constable, and Burton and Lashlee, his securities, for the sum of $33 58, with 12t per cent, thereon, and for the costs of the county court, circuit court, and this court.